IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION

| | |
|---|---|
| NADINE ADIEL TRAMPER, individually, )<br>and as Administrator of the Estate of K.L.T., )<br>her deceased minor son, and on behalf of )<br>T.L., her minor daughter, as Next Friend, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>U.S. DEPARTMENT OF HEALTH AND )<br>HUMAN SERVICES, PUBLIC HEALTH )<br>SERVICE, INDIAN HEALTH SERVICE, )<br>AND MARK A. SHEFFLER, M.D., )<br>PHS/IHS EMPLOYEE, )<br>)<br>    Defendant. ) | CASE NO:_____<br><br><br><br><u>**COMPLAINT**</u> |

## JURISDICTION

1. This action is brought pursuant to 28 U.S.C. 1346(b), 28 U.S.C. § 2671 et seq. (The Federal Tort Claims Act, "FTCA"), 25 U.S.C. § 450 et seq., as amended (The Indian Self-Determination and Education Assistance Act) and the "Memorandum of Agreement Under P.L. 638, Sec. 104(b) MOA-06-027" (Exhibit A, attached, hereinafter "The Agreement") between the Area Office of the Indian Health Service (IHS) and the Eastern Band of Cherokee Indians (EBCI) for the assignment of LCDR Mark A. Sheffler, M.D., employed by the Department of Health and Human Services, Public Health Service, Indian Health Service to the Eastern Band of Cherokee Indians, Cherokee, North Carolina 28719.

2. On June 30, 2011 Plaintiff submitted an Administrative Claim for the claim set forth below to the United States Department of Health and Human Services.

3. On July 5, 2012 the claim was denied by the Office of the General Counsel General Law Division, Department of Health and Human Services.

4. All conditions precedent to the filing of this complaint under the FTCA have been met.

5. Venue is properly within this Court under 28 U.S.C. § 1402(b) as the place of the acts complained of occurred on the tribal lands of the Eastern Band of Cherokee Indians located in Swain County, Cherokee, North Carolina in the Western District of North Carolina.

## PARTIES

6. Plaintiff is the natural mother of K.L.T., a deceased minor, and the Administrator of K.L.T.'s estate. See Exhibit B.

7. Plaintiff is a citizen and resident of Cherokee, North Carolina and of Cherokee tribal trust land.

8. Plaintiff is the natural mother of T.L., the minor sister of K.L.T.

9. The United States of America and its Department of Health and Human Services, Public Health Service, the Indian Health Service, and LCDR Mark A. Sheffler, M.D. are appropriate defendants under the Federal Tort Claims Act.

10. At all times relevant, Mark A. Sheffler, M.D., was an officer member of the Commissioned Corps of the United States Public Health Service providing services as an emergency medicine physician at the Cherokee Indian Hospital located on the tribal lands of the Eastern Band of Cherokee Indians, Cherokee, North Carolina.

11. The liability of the United States, by and through its Public Health Service employee, Mark A. Sheffler, M.D. is determined by the law of the place where the acts

2

complained of occurred which, in this case, was the tribal lands of the Eastern Band of Cherokee Indians.

12. The applicable "law of the place" in this action is the Agreement, the Tribal Code of the Eastern Band of Cherokee Indians §§ 1-2, 1-19, 7-2, and 28-1, and, to the extent that Cherokee law does not apply, the federal law, the law of the state of North Carolina, and the laws of other jurisdictions.

## FACTS

13. K.L.T. was born in 2001. K.L.T. was the brother of T.L., born in 2003.

14. On or about July 18, 2009, Plaintiff took T.L. to the emergency room ("ER") at the Cherokee Indian Hospital (CIH) for treatment. T.L. was noted to have experienced seizures, vomiting and fever.

15. On July 18, 2009, T.L. was transported to CIH ER. T.L.'s chart indicates that she was acting strangely, including clumsily running into walls, pulling her hair out and exhibiting other bizarre behaviors. Upon presentation to CIH ER, T.L. was transported to Mission Hospital ER in Asheville, North Carolina, where she was later admitted to the hospital.

16. Mission Hospital personnel noted that T.L. had suffered from several mosquito and tick bites in the days leading to her admission to the hospital, and that she had experienced seizures.

17. Mission Hospital personnel obtained blood and cerebrospinal cultures from T.L., and diagnosed her with probable encephalitis.

18. Lab reports on T.L.'s blood and cerebrospinal cultures were positive for LaCrosse encephalitis.

3

19. T.L. received treatment at Mission Hospital and ultimately recovered from her encephalitis infection.

20. On July 18, 2009, K.L.T. was also taken to CIH ER, and noted to be experiencing the same symptoms as T.L. except for seizures.

21. K.L.T.'s chart for his ER visit on the evening of July 18 notes that he was taken to the ER by his aunt, because his mother, the Plaintiff, was with his sister (T.L.) who had just been flown to Mission Hospital after experiencing seizures.

22. K.L.T. was seen by Dr. Sheffler while at CIH ER.

23. Dr. Sheffler suspected acute viral gastroenteritis and viral encephalitis.

24. Dr. Sheffler discharged K.L.T. with a prescription for Motrin 250 mg to be taken every 6 to 8 hours and recommendations to rest, drink clear liquids, and seek the care of a pediatrician "this week" if he did not improve.

25. K.L.T.'s chart does not reflect a neurological examination by Dr. Sheffler.

26. A spinal tap for laboratory evaluation of K.L.T.'s spinal fluid was neither ordered by Dr. Sheffler nor arranged for at another facility such as Mission Hospital in Asheville, North Carolina.

27. No blood or urine specimens were taken for laboratory analysis by Dr. Sheffler.

28. Dr. Sheffler did not admit K.L.T. to the hospital to monitor him for increasing temperature, lethargy, and seizures or transfer him to Mission Hospital for such monitoring.

29. Knowing that K.L.T.'s mother was at Mission Hospital with K.L.T.'s sister and was therefore unavailable to care for K.L.T., Dr. Sheffler did not determine whether K.L.T. could be properly cared for by someone else.

4

30. Dr. Sheffler provided no responsible adult with any instructions about monitoring K.L.T. for increasing temperature, lethargy, somnolence, or seizures.

31. At approximately 11:17 a.m. on July 19, 2009, an ambulance was dispatched to K.L.T.'s home, where paramedics discovered him actively seizing in a bathtub. K.L.T.'s fever had continued to rise following Dr. Sheffler's decision to discharge K.L.T. from the CIH ER.

32. K.L.T. was immediately transported by the Cherokee Tribal EMS to CIH and flown to Mission Hospital.

33. K.L.T. remained at Mission Hospital for approximately three days.

34. On July 22, 2009, K.L.T.'s neurological state became markedly worse, and he became unresponsive.

35. On July 23, 2009, K.L.T.'s family was advised by his physicians that he would not recover, and life support equipment was removed. K.L.T. died at approximately 3:35 p.m. on July 23, 2009.

## EXPERT WITNESS CERTIFICATION

36. It is hereby certified pursuant to N.C.R.Civ.P. 9(j) and section 7-14 of the Tribal Code that the medical care at issue in this action has been reviewed by Keith T. Borg, M.D., curriculum vitae attached as Exhibit C, who is a physician the plaintiff reasonably expects to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and section 7-14 of the Tribal Code and is willing to testify that the medical care administered to K.L.T. did not comply with the applicable standard of care or demonstrate the exercise of reasonable care and diligence or the application of best judgment because of the errors and omissions alleged in paragraphs 23 through 30 of this Complaint which errors and omissions were a proximate cause

of a delay in diagnosing and appropriately treating K.L.T.'s viral encephalitis which, in turn, was a proximate cause of his death on July 23, 2009.

## FIRST CAUSE OF ACTION

### Wrongful death pursuant to Eastern Band Tribal Code §§ 1-2, 1-19, and 7-2, and Custom, and N.C.G.S. § 28A-18-2.

37. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1-36 as though fully set forth herein.

38. At all times relevant, United States Public Health Service employee Mark A. Sheffler, M.D. owed K.L.T. duties under the Agreement, the Eastern Band Tribal Code §§ 1-2, 1-19, 7-2, and the Cherokee Tribe "Harmony Ethic" custom and tradition to (a) use reasonable care and diligence, (b) use best judgment, and (c) follow the applicable standard of care to "heal those who are hurting."

39. The actions described in paragraphs 25 through 30 (hereinafter the negligent acts) constitute a breach of the aforementioned duties on the part of the United States Public Health Service employee Mark A. Sheffler, M.D.

40. Wrongful death is a recognized cause of action under the Tribal Code, custom, and tradition.

41. Neither tribal custom and tradition nor the Tribal Code identifies the elements of damages recoverable for wrongful death.

42. N.C.G.S. §28A-18-2 sets forth the items of damage recoverable by the estate for losses suffered by the decedent's beneficiaries.

43. The sole beneficiary of K.L.T., deceased, is his mother, Nadine Adiel Tramper, the Plaintiff.

6

44. By reason of the negligent acts and omissions of Dr. Sheffler set forth in paragraphs 25 through 30 of the Complaint, the Plaintiff, Nadine Adiel Tramper, Administrator of the Estate of K.L.T., seeks a recovery of damages for injury and wrongful death as allowed by N.C.G.S. §28A-18-2, or as otherwise provided by law.

## SECOND CAUSE OF ACTION

**The claims of Plaintiff Nadine Adiel Tramper, in her individual capacity, and as Mother and next friend of T.L., a minor for negligent infliction of emotional distress under Tribal Code § 7-2 and Tribal Custom of the Eastern Band of the Cherokee Indians and the North Carolina common law.**

45. Paragraphs 1 through 36 are incorporated by reference.

46. One of Dr. Sheffler's potential diagnoses for K.L.T.'s condition on July 18, 2009 was viral encephalitis.

47. Instead, Dr. Sheffler diagnosed K.L.T.'s condition as acute gastroenteritis.

48. Dr. Sheffler knew that if his diagnosis was erroneous K.L.T. could die from viral encephalitis.

49. Dr. Sheffler knew that the death of K.L.T. from viral encephalitis could cause his mother and sister severe emotional distress.

50. It was foreseeable by Dr. Sheffler that any failures to use reasonable care and diligence, best judgment, and to follow the applicable standard of care could be a proximate cause of K.L.T.'s death and that K.L.T.'s mother and sister would suffer emotional distress as a consequence.

51. The Plaintiff Nadine Adiel Tramper witnessed her son's suffering and ultimate death and thereby has suffered in the past, and will continue to suffer in the future, severe emotional distress and mental anguish.

52. The Plaintiff T.L., by and through her mother and next friend, Nadine Adiel Tramper, witnessed her brother's suffering and ultimate death and thereby has suffered in the past, and will continue to suffer in the future, severe emotional distress and mental anguish.

53. The negligent acts of Dr. Sheffler aforementioned were a proximate cause of the death of K.L.T. and the past and future emotional distress and mental anguish of Nadine Adiel Tramper and T.L., by and through her next friend and Mother, Nadine Adiel Tramper.

A TRIAL BY JURY IS REQUESTED.

WHEREFORE, Plaintiff prays:

(a) for judgment against the United States under 28 U.S.C. § 2672, applying the Eastern Band of the Cherokee Indians Tribal Code and Custom and N.C.G.S. §28A-18-2, in the amount of $3,000,000.00 for the wrongful death of K.L.T. in her capacity as Administrator of the Estate of K.L.T., deceased;

(b) for judgment under 28 U.S.C. § 2672, applying the Eastern Band of the Cherokee Indians Tribal Code and Custom and the North Carolina common law, in the amount of $1,000,000.00 for damages she sustained as a consequence of the negligent infliction of emotional distress;

(c) for judgment under 28 U.S.C. § 2672, applying the Eastern Band of Cherokee Indians Tribal Code and Custom and the North Carolina common law in the amount of $1,000,000.00 in her capacity as next friend and Mother of T.L. for the damages sustained by T.L., a minor, as a consequence of the negligent infliction of emotional distress;

(d) for attorneys' fees, costs and expenses as appropriate under the law; and

(e) for such other and further relief as the Court deems mete and just.

This 20th day of December, 2012.

**COUNSEL FOR PLAINTIFF:**

s/Fred D. Smith, Jr.
Fred D. Smith, Jr. (N.C. Bar# 25887)
FRED D. SMITH, JR., P.C.
46 West Main Street
P.O. Box 991
Martinsville, VA 24114-0991
(276) 638-2555 [telephone]
(276) 638-2550 [facsimile]
freddsmithjr@embarqmail.com

and

s/Kevin M. Elwell
Kevin M. Elwell (N.C. Bar # 33730)
K.M. ELWELL, P.C.
777 Gloucester Street, Suite 102
Brunswick, GA 31520
(912) 580-4600 [telephone]
(912) 466-8893 [facsimile]
kmelwell@kmelwell.com